J-S67007-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| CHELSEA ANN CICCANTI, | |
| Appellant | No. 857 MDA 2015 |

Appeal from the Judgment of Sentence April 16, 2015
In the Court of Common Pleas of Schuylkill County
Criminal Division at No(s): CP-54-CR-0001392-2014

BEFORE:  BOWES, PANELLA, AND PLATT,* JJ.

MEMORANDUM BY BOWES, J.:                    **FILED DECEMBER 14, 2015**

Chelsea Ann Ciccanti appeals from the judgment of sentence of eighteen to thirty-six months incarceration that the trial court imposed after a jury convicted her of aggravated assault of a police officer, simple assault, resisting arrest, and disorderly conduct.  We affirm.

The Commonwealth adduced the following proof in support of Appellant's convictions.  On August 2, 2014, Pottsville Bureau Police Officer Brian Reno was on duty when he saw Appellant.  Officer Reno knew that there was an outstanding arrest warrant for Appellant so he told her to stop. Appellant, who was with a male companion, immediately fled.  Officer Reno radioed Police Officer Renee Truscott, who was also on duty in the same area.  Officer Truscott parked her patrol car and began to walk in the

_____
* Retired Senior Judge assigned to the Superior Court.

direction of where Officer Reno observed Appellant. Officer Truscott spotted Appellant and her friend and told Appellant to stop as there was a warrant for her arrest.

Appellant continued to flee, but Officer Truscott caught up with her and attempted to take her into custody. Officer Truscott testified that Appellant resisted arrest. Officer Truscott was asked to explain how Appellant physically resisted her, and the witness replied:

A. . . . . [Appellant] was tensing up, pulling away. She was trying to - - to get away from me. I was able to - -after a brief struggle, I was able to gain control of her and take her to the ground. At that time, as I attempted to place handcuffs on her, she continued to physically resist and then began to violently fight with me. . . .

. . . .

A. **She began violently punching me, kicking me, scratching me, shoving, grabbing at me**. She grabbed my equipment, my duty belt. She actually - - I didn't know at the time; but she turned the channel on my radio, my portable radio changing the frequency. So later when I attempted to contact - - call for backup, no one heard me 'cause I was - - I was on a different frequency.

I remember her looking past me and calling come back, help me to her boyfriend; and this is while she was attacking me. All I could imagine is that he's going to come up behind me and strike me over the head or who knows.

Q. And what happened then?

A. The assault continued from the street. We actually were in the middle of the street in the eastbound lane of traffic. It continued up onto the sidewalk, back down into the street, and then like around a parked vehicle in the area.

I repeatedly told [Appellant] to stop resisting, to stop fighting me; but she ignored all reasonable commands and continued to violently fight with me.

Q. Now, were you engaged in your duties as a police officer at the time of the assault?

A. Yes. And there was more. She - - at one point, she grabbed me with both hands and held onto me; and **she violently and very deliberately shoved me backward driving me off the sidewalk and down to the ground at which time my ankle - - I - -felt my ankle break. I heard it snap. I felt a shooting pain**.

My ankle, like down to the bone it was just - -it just goes through me thinking about it. It was horrible, excruciating pain that I never felt before.

N.T. Trial, 4/9/15, at 75-76 (emphases added).

After Appellant broke Officer Truscott's ankle, other officers arrived on the scene, and they subdued Appellant, placing her under arrest. In addition to suffering from a broken ankle due to Appellant's assault, Officer Truscott sustained abrasions to her knees and elbows as well as scratches on her face and neck.

Based upon this proof, a jury found Appellant guilty of aggravated assault of a police officer, simple assault, resisting arrest, and disorderly conduct. The trial court then acquitted Appellant of criminal mischief. On April 16, 2015, the matter proceeded to sentencing. The trial court had the benefit of a presentence investigation report. As a result of these charges, Appellant's parole in another case was revoked. She was serving eighteen to thirty-six months in state prison when sentencing occurred in this matter.

- 3 -

The court herein sentenced Appellant to eighteen to thirty-six months incarceration as to the aggravated assault of a police officer, found that the simple assault offense merged with the aggravated assault conviction, and imposed a concurrent sentence on resisting arrest. Appellant also was given a one-year probationary term consecutive to the jail sentence for disorderly conduct. The sentence was imposed consecutively to the sentence Appellant then was serving.

In this appeal, which followed imposition of the described sentence, Appellant raises a single contention:

> Was the evidence presented at trial sufficient as a matter of law to support a finding of guilt beyond a reasonable doubt regarding Count #1, Aggravated Assault, specifically, was the evidence sufficient to show Appellant's state of mind; that Appellant attempted to cause or intentionally or knowingly caused bodily injury to the police officer?

Appellant's brief at 3.

Appellant thus challenges the sufficiency of the evidence supporting her conviction of aggravated assault of a police officer. We view this contention under the following principles:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the

evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [finder] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Best*, 120 A.3d 329, 341 (Pa.Super. 2015) (citation omitted).

A person is guilty of aggravated assault of a police officer if he "attempts to cause or intentionally or knowingly causes bodily injury to any of the officers, agents, employees or other persons enumerated in subsection (c), in the performance of duty." 18 Pa.C.S. § 2702(a)(3). Officer Truscott was a person defined in 18 Pa.C.S. § 2703(c), which provides that the "officers, agents, employees and other persons referred to in subsection (a) shall include a . . . [p]olice officer." 18 Pa.C.S. § 2703(c)(1). Bodily injury means the "[i]mpairment of physical condition or substantial pain." 18 Pa.C.S. § 2301.

Herein, the evidence establishes that Appellant caused bodily injury, consisting of a substantial pain from a broken ankle, to Officer Truscott while she was performing her duty as a police officer. This bodily injury occurred after, according to Officer Truscott's testimony, Appellant deliberately pushed her from the sidewalk. Thus, the elements of the crime in question

were proven by the Commonwealth. On appeal, Appellant contends that the evidence failed to prove that she intentionally caused the bodily injury to her victim and that she merely was attempting to avoid arrest. Appellant's brief at 9. We rejected this same averment in *Commonwealth v. Brown*, 23 A.3d 544 (Pa.Super. 2011). Therein, the defendant was being arrested by a police officer and resisted being placed in handcuffs by pulling away, throwing the officer to the ground, and running. Thereafter, another officer tackled Brown, and Brown began to repeatedly strike him.

After he was convicted of aggravated assault of a police officer, Brown challenged the sufficiency of the evidence supporting that conviction on appeal. Specifically, Brown argued that he "did not intentionally cause bodily injury" to the police officers because "he only came into contact with [them] while trying to avoid being handcuffed" during an arrest. *Id*. at 560. The defendant insisted that he "did not intend to injure anyone." *Id*.

This Court rejected the assertion that the evidence was insufficient to establish that Brown intended to cause bodily injury to his victims. We noted that Brown threw one officer to the ground and violently struggled after another officer caught him. During that struggle, the defendant struck the second officer "repeatedly on the arm, shoulder and mouth, causing him to have a swollen lip." *Id***.** We concluded that the defendant's actions supported the jury's conclusion that the defendant "intended to cause injury to the officers." *Id*.; *accord Commonwealth v. Rahman*, 75 A.3d 497

(Pa.Super. 2013) (evidence was sufficient to support *mens rea* element of aggravated assault of a police officer where defendant punched victim several times and then shoved him backwards with both hands); ***see also Commonwealth v. Jackson***, 955 A.2d 441, 444 (Pa.Super. 2008) (citation omitted) ("The law permits the fact finder to infer that one intends the natural and probable consequences of his acts.").

**Brown** and **Rahman** are controlling herein in that the defendants' actions in those cases were identical to Appellant's behavior. Officer Truscott reported that, after she caught Appellant, Appellant began to punch, kick, and scratch the officer. Then, Appellant deliberately pushed the officer backward to the ground, breaking her ankle. The victim stated that she suffered excruciating pain due to her injury. Hence, we conclude that the evidence was sufficient to support the jury's finding that Appellant intentionally caused bodily injury to Officer Truscott.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/14/2015